Gregory Donnell FULLER, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–86–0231–CR.

Court of Appeals of Texas,
Tyler.

Aug. 31, 1987.

Kurt Noell, Tyler, for appellant.

Jack Skeen, Jr., Dist. Atty., Tyler, for appellee.

COLLEY, Justice.

Appellant Gregory Donnell Fuller was convicted by a jury of burglary of a habitation with intent to commit sexual assault. The trial judge assessed his punishment at sixteen years' confinement.

Fuller briefs three points of error, contending that the court erred in (1) permitting the State to reopen its case in chief, (2) overruling defense objections to certain testimony of State's witness Marilyn Kennedy, and (3) refusing to submit to the jury the lesser included offense of criminal trespass. We affirm the judgment.

At about 1:30 a.m. on March 21, 1986, Ronnie Lee Gray, a Smith County Deputy

Sheriff, who resided at 208 W. Phillips in Tyler, observed a nude black male climbing a stepladder leading to a first floor window of the premises next door located at 210 W. Phillips, a group home operated by the Texas Department of Mental Health and Mental Retardation (hereafter MHMR) for retarded females. Gray telephoned the Tyler Police Department and reported the occurrence. Tyler Police Officer Richard Sanders and Duncan Wilkins were separately dispatched to the scene. Before either officer arrived, the intruder had entered the window to a "back bedroom" of the residence located at 210 W. Phillips.

The evidence establishes that a total of twelve mentally retarded women were housed in the residence, two of whom were abed in the room entered by Fuller. Wilkins remained at the location of the window, and Sanders went to the front entrance of the house, knocked on the door and was admitted by Marilyn Kennedy, a resident trainer at the home. She had worked with these residents for about four years. Sanders identified himself as a police officer and advised Kennedy of the occurrence, whereupon Kennedy guided him to the inside door of the bedroom entered by Fuller. Kennedy entered the room first, followed by Sanders who shined his flashlight about the room. Sanders and Kennedy both observed Fuller completely nude in bed with a thirty-year-old retarded female, Linda Spradlin. When Sanders saw Fuller he told him that he was a police officer and ordered him to "freeze." Fuller leaped over Spradlin and started out the window he had previously entered. Sanders unsuccessfully attempted to grab him, and thereafter pushed Fuller out of the window, and in so doing, he, himself, fell with Fuller to the ground below. After a struggle, Sanders and Wilkins managed to handcuff Fuller who was thereafter transported to jail. The officers testified they found and appropriated clothing stacked neatly at the foot of the ladder, and a pair of men's underwear lying on the window sill. The record also reveals that on the date of the offense Fuller was a tenant of

the apartment located at 208 W. Phillips, having rented the same on March 8, 1986.

Fuller contends in his first point that the court erred in permitting the State to reopen its case and present additional testimony of the witness Kennedy.

■ The record reveals that after the State rested its case in chief, Fuller moved for an instructed verdict which was overruled by the trial court. The defense then presented its evidence after which the State, before the arguments in the case commenced, moved the court to permit it to reopen and present further testimony of its witness Marilyn Kennedy, stating: "The State requests to reopen one short witness [sic] on the issue of nonspousal residence [sic] in the house and noneffective consent [sic]."

Tex.Code Crim.Proc.Ann. art. 36.02 (Vernon 1981)[1] reads:

Testimony at any time

The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice.

This statute has long been liberally construed in favor of allowing either the State or the defendant to reopen the evidence and offer additional testimony. *Beck v. State*, 719 S.W.2d 205, 214 (Tex.Cr.App. 1986), and authorities cited therein. In *Kemp v. State*, 38 Tex. 110, 111 (1873), the court, in construing article 3046, Paschal's Digest, the initial precursor of article 36.02, wrote:

This statute was intended to give the [trial court] great discretion in the *admission* of testimony; and in order that justice may be administered in all cases, it has materially changed the rigid [common law] rule which had hitherto obtained, in regard to the *admission* of evidence. It is believed that the discretion thus confided to the [trial court] was intended not to be a subject of revision by the appellate court, *unless it be made to appear that the discretion has been*

---

1. All reference to articles are to the Texas Code of Criminal Procedure unless otherwise noted.

*abused to defeat the ends of justice.* (Emphasis ours.)

We have reviewed the reported decisions of the Court of Criminal Appeals delivered since 1910 construing article 36.-02 and its forerunners, and find no case reversing a conviction on the ground that the trial court abused its discretion *in allowing* the State to present additional evidence in instances where the State made a timely request to reopen under the statute. The decisions in sum, articulate the proposition that where additional evidence is allowed, reversal will result only when the trial court abuses its discretion.[2] However, the question before the appellate court is whether the trial court exercised its discretion in favor of "due administration of justice," or said another way, does the court's exercise of its discretion serve the ends of justice. Thus it is clear that the discretion invested in the trial court to allow the State[3] to present additional evidence is as broad as the phrase, "necessary to due administration of justice." *White v. State,* 618 S.W.2d 65, 67 (Tex.Cr.App.1981); *Holcomb v. State,* 523 S.W.2d 661, 662 (Tex.Cr. App.1975). On the other hand, if the trial court refuses to permit a *defendant,* on his timely request, to reopen and present additional admissible testimony, material to disputed issues in the case, "irrespective of its weight, or of its probative value," it abuses its discretion under article 36.02. *Vital v. State,* 523 S.W.2d 662, 664–665 (Tex.Cr. App.1975).

The rule of construction stated in *Vital* and its progeny, rests upon a sound logical principle, viz., when a court denies a defendant's timely request to present *additional admissible* evidence, material to his defense, that court wrongfully *excludes* evidence that a defendant is entitled to have considered by the trier of the fact. So a court, in considering a timely defense request to reopen and present additional evidence, must inquire into and determine if the proffered evidence is admissible, material to resolution of disputed issues, and readily available. If it is, the court has no discretion to deny the request. *Vital,* 523 S.W.2d at 664–665.

The principle underlying *Vital's* rule is that by denying the defendant's request, the trial court wrongfully excludes defense evidence from the jury's consideration. Whereas, in contrast, where the court allows the State to reopen and present additional evidence, no harm to the defendant attends that action even though the evidence offered be held inadmissible by the trial court, or by an appellate court. This is true because the defendant may protect his case and his rights of defense by making appropriate objections to the additional evidence offered by the State in order to preserve the error, if any, committed by the court in *admitting* the evidence. Fuller's first point of error is overruled.

Fuller contends by his second point that the court erred in two respects: first, in overruling his hearsay objection to the testimony of Marilyn Kennedy relating to the "marital status," "consent for sexual contact," and "mental capacity to give ... consent" of the retarded females, including specifically Linda Spradlin, who occupied the residence at 210 W. Phillips; second, that if the testimony was admissible, as an exception to the hearsay rule, its admission deprived him of his right of confrontation and cross-examination of Spradlin and the other eleven retarded females, because the testimony lacked "the indicia of reliability sufficient to insure integrity of the fact-finding [sic] process...." Fuller's contentions are, in our opinion, without merit. Concisely stated, Kennedy testified that neither she nor any of the retarded female residents were married to Fuller, and that none of the twelve retarded women had sufficient mental capacity to consent to sexual intercourse.

Tex.R.Crim.Evid. 801,[4] in part, reads:

---

2. *E.g., Perry v. State,* 464 S.W.2d 660, 662 (Tex. Cr.App.1971), *dism'd w.o.j.,* 404 U.S. 953, 92 S.Ct. 324, 30 L.Ed.2d 270 (1971).

3. Which, of course, has no right to seek appellate review of an adverse ruling on its request.

4. All reference to rules herein are to the Texas Rules of Criminal Evidence.

(a) Statement. A 'statement' is (1) an oral or written verbal expression....

(b) Declarant. A 'declarant' is a person who makes a statement.

(c) Matter asserted. 'Matter asserted' includes any matter explicitly asserted....

(d) 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial ..., offered in evidence to prove the truth of the matter asserted.

Under Rule 801(d), the testimony of Kennedy objected to by Fuller does not constitute hearsay, thus Fuller's federal and state confrontation rights under the Sixth Amendment and Tex. Const. Art. I, § 10, are not implicated. The point of error is overruled.

■ By his third point, Fuller asserts that the trial court erred in refusing to submit a charge on the lesser included offense of criminal trespass. Fuller contends that the evidence as a whole demonstrates that if he is guilty of any offense, he was guilty only of criminal trespass. We do not so construe the evidence. The main thrust of Fuller's argument is that because of the similarity of the residences located at 208 and 210 W. Phillips, the fact that Fuller had lived on W. Phillips for only thirteen days before the commission of the offense, the fact that it was dark, and the fact that he was intoxicated and disoriented, he mistook the premises at 210 W. Phillips for those located at 208 W. Phillips. Fuller's discussion of the evidence completely ignores the undisputed facts that most of his clothing had been removed by him before he climbed the ladder, and that, before he entered the window he removed the last of his clothing, his underpants; and, that he climbed into, and remained in bed with Linda Spradlin while nude until discovered, and then attempted to flee. We have carefully studied the record and are unable to find any evidence even tending to raise the issue that if Fuller was guilty of any offense, he was guilty only of criminal trespass.[5] *Denison v. State*, 651 S.W.2d 754,

759 (Tex.Cr.App.1983); *Royster v. State*, 622 S.W.2d 442 (Tex.Cr.App.1981).

The court correctly refused to submit the lesser included offense of criminal trespass in this case. Fuller's third point of error is overruled.

The judgment is affirmed.

---

5. Committed by entering a habitation *recklessly* "when he had notice that entry was forbidden."

*Day v. State*, 532 S.W.2d 302, 306 (Tex.Cr.App. 1975).